IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 17, 2017

**STATE OF TENNESSEE v. GREGORY LAMAR GILLESPIE, JR.**

**Appeal from the Criminal Court for Hamilton County**
**No. 293124   Barry A. Steelman, Judge**

_____

**No. E2016-01970-CCA-R3-CD**

_____

Defendant, Gregory Lamar Gillespie, Jr., pled guilty in the Hamilton County Criminal Court to the offenses of robbery, aggravated assault, and possession of a firearm by a convicted felon. Defendant received an effective six-year sentence to be served on probation (effective February 1, 2016) with GPA monitoring for the first year. On April 22, 2016, a probation violation report was filed. On April 27, 2016, a capias for Defendant's arrest was issued. An addendum to the report was filed on August 17, 2016. Following a probation violation hearing, the trial court revoked probation and ordered Defendant to serve his six-year sentence in confinement. On appeal, Defendant argues that the trial court "erred by not considering additional means – more restrictive than the probation Defendant was alleged to have violated, but less restrictive than incarceration – that were available." He further contends that the trial court "erred by ordering the Defendant's sentence into execution." We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Joseph Lodato, Chattanooga, Tennessee, for the appellant, Gregory Lamar Gillespie, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; M. Neal Pinkston, District Attorney General; and Lance W. Pope, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

*Background*

Chris Mitchell is employed by the Department of Correction and began supervising Defendant on his probation on February 16, 2016. When asked how Defendant performed on probation, Mr. Mitchell testified:

> In my opinion, it was very poor. Didn't stick to his curfew, constantly complained about the curfew that the judge[] gave him. Gave him an opportunity to get his GED through the Father to the Fatherless program, also job assistance. He failed to complete that as far as getting his GED or any job assistance program.

Mr. Mitchell testified that he filed the original probation violation report after Defendant was arrested on April 21, 2016, for possession of marijuana for resale. At that time, he instructed Defendant to continue reporting for his supervised probation but Defendant failed to do so. Mr. Mitchell testified that Defendant last reported to him on April 12, 2016, and he was supposed to report again on Aril 26, 2016, five days after his arrest. Defendant did not contact Mr. Mitchell between the time that he was supposed to report on April 26, 2016, and the time that the capias warrant was "executed" against Defendant on June 14, 2016. The capias had been issued on April 27, 2016.

Mr. Mitchell testified that he arranged for Defendant to obtain his GED by attending classes through the "Father to the Fatherless program." Defendant attended some of the classes but he stopped going at some point and did not obtain his GED. Mr. Mitchell noted that one condition of Defendant's probation was that he not use drugs. He said that Defendant admitted to using hydrocodone. Mr. Mitchell testified that Defendant was supposed to wear a GPS monitoring device as a condition of his orders for enhanced probation to primarily monitor his curfew, which was 8:00 p.m. to 6:00 a.m. Mr. Mitchell noted that Defendant violated his curfew thirty-four times between March 3, 2016, and April 20, 2016. While on probation, Defendant was also convicted of possession of a controlled substance and for giving a false report to police. Mr. Mitchell noted that Defendant had previously been placed on probation for an aggravated burglary in another case.

On cross-examination, Mr. Mitchell testified that Defendant's charge for possession of marijuana for resale was eventually "pled down" to a misdemeanor conviction. Mr. Mitchell said that he did not administer a drug test to Defendant and that Defendant admitted to using hydrocodone while on probation. He testified that Defendant voiced concerns and had difficulties with his curfew but he did not recall the

reasoning for Defendant's concerns. Mr. Mitchell said that Defendant did not like having a curfew because it "kind of restricted him from his freedom." Defendant provided Mr. Mitchell with information about working one job while on probation, which was a week spent working for Mitchell Tire Company.

Strange Davis, Defendant's fiancée, testified that she and Defendant live together, and they were living together at the time of his most recent arrest. She said that she and Defendant have two small children. Ms. Davis testified that Defendant provided financial support for the children, and he watched the older child while Ms. Davis worked. Ms. Davis told the trial court that Defendant could stay with her if he was placed back on probation.

Defendant testified that he was fitted with a GPS monitoring device in mid-February 2016, shortly after he was placed on probation. He said that he lived with his mother for a period of time after his release but they did not "see eye to eye," and she was not "happy" about him living there. Thereafter, Defendant moved in with Ms. Davis, and he said that he immediately reported the new address to his probation officer.

Defendant agreed that while on probation, he plead guilty to misdemeanor possession of marijuana and "solicitation of false reports[.]" He was ordered to serve 11 months, and 29 days in confinement. Concerning the offenses, Defendant testified:

> The reason I pled guilty was because I thought it was in my best interest to do that; not saying that I was guilty. At the time, I think I was on my way to go get my fiancée from work, and I end up throwing on a jacket that was left on the couch. I think one of my family member[s] was over there. End up leaving, I throw the jacket on, and, you know, it was cold outside, and on the way going out the door, Officer Lee immediately pulled up on me and said I looked suspicious sort of like a suspect, plus it was a shooting had went on there, so I guess he was thinking of me, and I had on some red jump pants, so, you know, I guess he thought it was me.

Defendant testified that he had been using hydrocodone because of tooth pain. He said that he did not have insurance to have the tooth pulled so he got the hydrocodone from a friend. Defendant testified that he did not complete the Father to the Fatherless program because transportation to and from the program was "kind of hard." He also said that he had an "under-the-table" job helping a woman set up for weddings, and he had to watch his daughter. Defendant said that he immediately reported all of these difficulties to Mr. Mitchell.

Defendant testified that his curfew violations occurred because he sometimes went out to get food or to stop by a store. He said that he and Ms. Davis sometimes argued, and he would stay the night at his brother's house. He also picked Ms. Davis up from work on occasion. Defendant testified that it was an emotional time for him because his grandmother passed away around the time of his release on probation, and that made him very sad and upset. Defendant claimed that he told "most" of this to Mr. Mitchell. Defendant testified that he sometimes called Mr. Mitchell when he was going to be late getting home, and Mr. Mitchell would tell Defendant to notify Mr. Mitchell by phone call or text when Defendant arrived home. He said that Mr. Mitchell was "cool" with everything.

Defendant testified that he provided financial support for his family through the "under-the-table" job and by working at a tire factory. Defendant asked the trial court to be placed back on probation, specifically on "house arrest." He said that he wanted to be a "more present father" for his children. Defendant testified that he had spoken with Dewayne Stephens of the House of Refuge, and Mr. Stephens explained their program to him. He thought that he could follow the rules of the program, and he would take advantage of their "programs and guidance [.]"

On cross-examination, Defendant admitted that he gave his younger brother's name, date of birth, and social security number to the officer who arrested him on June 12, 2016, for expired registration, no proof of insurance, driving on a revoked license, false reports, and the probationary capias. He also admitted that his daughter was in the car with him when he was arrested for selling drugs on April 21, 2016. However, Defendant claimed that he was not selling drugs at the time, and he did not know that the marijuana was in his coat pocket. Defendant testified that he could not recall the lady's name that employed him to help set up weddings. Defendant said that he used "special" scissors to cut the GPS monitoring device from his ankle after wearing it for approximately two months.

Dewayne Stephens is the Executive Director for the House of Refuge. He met with Defendant approximately one year earlier while Defendant was incarcerated, and they discussed the nature of the House of Refuge program and the requirements. Mr. Stephens testified that Defendant seemed receptive and expressed an interest in the program. He also said that House of Refuge offers transportation to their programs, and they will soon be offering GED classes. Mr. Stephens testified that Defendant would be required to work as part of the program, and they would help him find a job.

The trial court revoked Defendant's probation and made the following findings:

All right. Regarding [Defendant], the Court notes in Exhibit 1, which is the probation violation report, that [Defendant] is deemed by the probation department, it's documented that he's affiliated with the Vice Lords as determined by Officer May of the Chattanooga Police Department in - - well, at some prior time.

[Defendant] did plead guilty to a violent crime and that distinguishes him from most members of the community. He pled guilty to an episode where he was alleged to have, with another individual, approached a man who was mowing his grass and shot him, and I don't know why you plead guilty to something like that if you didn't do it. I know sometimes there are episodes where people believe it's in their best interest to plead guilty, so yeah, I do understand that that occurs sometimes.

But [Defendant] now has an affiliation with a notorious Chattanooga gang and a robbery conviction, and then he's asking for the opportunity to go to an alternative sentencing program that basically puts faith and trust in him that he will comply.

While House of Refuge has some successes, and I believe that it is a worthy program, by Mr. Stephen's own admission, 60 percent of their people are successful, which means that four out of ten are not, and with those four out of ten, they walk off usually, and the Court has already seen [Defendant] walk off once in that he decided that he didn't want to be monitored with his whereabouts any longer and actually vandalized property belonging to either the State or the county in that house arrest bracelet.

So the Court finds that [Defendant] has had his opportunity to be on house arrest, actually something less than house arrest with that GPS monitor, and that he did, during a 60-day period, violate something as simple as curfew 34 times. One of those times when he violated curfew - - well, I don't know if he was in violation of curfew or not, but he was found in a housing project with an infant in the motor vehicle, and he was in possession of marijuana that appeared to the officer, the officer swore under oath that it appeared to the officer that it was packaged for resale.

So the Court finds that the defendant's numerous numerous violations of curfew while he is on probation, as well as his failure to complete a GED program and this Father to the Fatherless opportunity that he was given

as part of - - apparently, in reading the report - - part of the VRI initiative even; the fact that he was arrested for possession of marijuana, and that is exacerbated by the fact that he is responsible for the care of his infant child when arrested for that episode; that he absconded after vandalizing the property, being the ankle monitor; and then, that while he was stopped for this traffic offense, he knew he had an outstanding warrant and he gave a false name, but not only a false name, he gave the name of his brother.

And we tell juries in our jury trials that if the jury finds that a witness lied about one thing, they can find that they are not credible as to other things, and the Court really doesn't find that [Defendant] is a credible witness. I think he's here today telling the Court he'll go to church and he'll study the Bible and he'll do whatever he's got to do to keep from going to prison, and I really don't think he's sincere about that. Sometimes I do, but [Defendant] doesn't impress me as one of those people, and this is not one of those times.

I'm also not impressed with the attitude of his fiancée here from the standpoint of some of the answers that she gave to her questions about the care of the children, and this is all going on in public housing where some people are law-abiding and trying to make their way, and then complain about the presence of people selling marijuana and other drugs and having guns and shooting and so forth.

So the Court finds that [Defendant] has given the Court a number of reasons to revoke his probation, and I find that he has violated and that the sentence should be ordered into execution. His probation is revoked.

*Analysis*

Defendant argues that the trial court "erred by not considering additional means – more restrictive than the probation Defendant was alleged to have violated, but less restrictive than incarceration – that were available." He further contends that the trial court "erred by ordering the Defendant's sentence into execution."

The revocation of probation lies within the sound discretion of the trial court. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). It is well-settled that a trial court has the authority to order incarceration of a defendant for the entire term of the sentence when the defendant's probation has been revoked. Tenn. Code Ann. §§ 40-35-310(a), 40-35-311(e)(1)(a); *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

"[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999). As evidenced in the record which Defendant does not dispute, he violated the terms and conditions of his probation by pleading guilty while on probation to possession of a controlled substance and solicitation to make false reports; failing to report as instructed to his probation officer; testing positive for cocaine; and violating his curfew 34 times. Defendant also stopped attending GED classes through the Father to the Fatherless program, and he failed to complete any job assistance program. Defendant was also $398 in arrears on his probation fees. Defendant admitted during the probation violation hearing that he used "special scissors" to remove his GPS monitoring device without permission. He also admitted to using hydrocodone that he claims to have gotten from a friend.

The trial court did not err in this case by revoking Defendant's probation and ordering him to serve his six-year sentence in confinement.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE